IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PETER W.,

        Plaintiff,

  v.                                Civil Action No.
                                      3:20-CV-1393 (DEP)

KILOLO KIJAKAZI, Acting
Commissioner of Social
Security,

        Defendant.
_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM      PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          HEATHER M. LACOUNT, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on June 9, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   June 14, 2022
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PETER W.,
                                              Plaintiff,

-v-                                           3:20-CV-1393

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                              Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
June 9, 2022
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LACHMAN & GORTON LAW OFFICE
    P.O. Box 89
    1500 East Main Street
    Endicott, New York 13761
    BY:  **PETER A. GORTON, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **HEATHER M. LACOUNT, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1              (The Court and all parties present by telephone.
2  Time noted:  11:23 a.m.)
3              THE COURT:  Plaintiff has commenced this proceeding
4  pursuant to 42, United States Code, Section 405(g).  The
5  background is as follows:  Plaintiff was born in October of
6  1975.  He stands 6'4" in height and weighs 280 pounds.  He is
7  characterized as at least mildly obese.  Plaintiff lives in
8  Owego, New York with his wife and two children, who at this time
9  should be approximately 15 and 17 years of age.  Plaintiff has
10 an Associate's degree and while in school attended regular
11 classes.  Plaintiff does not have a driver's license due to
12 driving while intoxicated convictions.
13             Plaintiff stopped working in January of 2015.  Prior
14 to that time, he worked as a teacher's aide for various
15 employers, mostly in the pre-school area, and also as a child
16 daycare director.  Plaintiff has been described by his treating
17 physician, Dr. Van Gorder, as a stay-at-home dad.  That's at
18 page 822.
19             Physically, plaintiff suffers from lumbar spine
20 issues which resulted in four surgeries, left and right knee
21 arthritis resulting in surgeries in April of 2019 for his left
22 knee -- I'm sorry, his right knee, and June of 2019 for his left
23 knee.  Those were both arthroscopic surgeries.  Plaintiff
24 suffered from atrial fibrillation, or AFib, obstructive sleep
25 apnea for which he utilizes a CPAP machine, and obesity.

1             Mentally, plaintiff suffers from depression, anxiety,
2    and a conversion disorder which causes pseudo nonepileptic
3    seizures.  He also has a history of substance abuse and
4    substance use disorder.  He has been sober since approximately
5    September of 2015.
6             Plaintiff treats with Lourdes Family Practice,
7    including Family Nurse Practitioner Kelly Kraus; a
8    pulmonologist, Dr. Ihsan Khan; and Tioga County Department of
9    Mental Hygiene; Jodi Sampey, a counselor; and Deena Schwartz, a
10   PNP.  He also treats with Dr. Thomas Van Gorder and Nurse
11   Practitioner Sergii Maistruk.  He sees his counselor, Ms.
12   Sampey, two times per month and receives medication management
13   one time per month.  He has been prescribed various medications,
14   including Cymbalta, Seroquel, Wellbutrin, and Gabapentin.
15            Plaintiff has never smoked, but has, as previously
16   indicated, consumed alcohol in the past.  His activities of
17   daily living include the ability to perform light housework,
18   some minimal cooking, he goes shopping with his wife, he attends
19   AA meetings, he participates in a barbershop quartet, and a
20   church chorus.  He is involved with caring for his children and
21   attending or helping them with after school activities.  He can
22   socialize with family, he walks his dog, and enjoys gardening.
23            Procedurally, plaintiff applied for Title II benefits
24   on March 18, 2019.  A prior application on February -- in
25   February of 2015 was denied in October of 2017.  In his pending

1  application, he alleged an onset date of October 17, 2017, and
2  claimed disability due to pseudo nonepileptic seizure disorder,
3  back injuries and surgeries, atrial fibrillation, obstructive
4  sleep apnea, depression, and anxiety.  He did not mention the
5  knees, although I'll note that his application was filed prior
6  to his knee surgeries.
7           A hearing was conducted on August 29, 2019, by
8  Administrative Law Judge Jeremy Eldred who issued an unfavorable
9  decision on September 24, 2019.  That became a final
10 determination of the agency on September 18, 2020, when the
11 Social Security Administration Appeals Council denied
12 plaintiff's request for a review.  This action was commenced on
13 November 11, 2020, and is timely.
14          In his decision, ALJ Eldred applied the familiar
15 five-step sequential test for determining disability.  He
16 determined that plaintiff had not engaged in substantial gainful
17 activity during the relevant period, which is October 17, 2017,
18 to his date of last insured status of March 31, 2019.
19          He determined at step two that plaintiff does suffer
20 from impairments that -- severe impairments that impose more
21 than minimal limitations on his ability to perform basic work
22 functions, including degenerative and postoperative changes in
23 the lumbar spine, degenerative changes of the left knee,
24 degenerative changes of the right knee, atrial fibrillation,
25 obstructive sleep apnea, obesity, depressive disorder, anxiety

1    disorder, conversion disorder, and a history of substance use
2    disorders.
3            At step three, ALJ Eldred concluded that plaintiff's
4    conditions did not meet or medically equal any of the listed
5    presumptively disabling conditions set forth in the
6    Commissioner's regulations, specifically considering listings
7    1.02, 1.04, 12.04, 12.06, and 12.07.
8            After surveying the evidence of record, ALJ Eldred
9    issued an RFC which -- finding which limited plaintiff to
10   sedentary work with both physical and mental additional
11   limitations.
12           Physically, he can never climb ladders, ropes, or
13   scaffolds; can occasionally climb ramps or stairs; can
14   occasionally balance, stoop, kneel, crouch, or crawl; is unable
15   to do work that requires driving a motor vehicle; is unable to
16   do work that requires exposure to hazardous conditions such as
17   work done at heights or work using dangerous machinery.
18           Mentally, the ALJ concluded that plaintiff can
19   perform only simple and routine tasks; can make only simple
20   work-related decisions; can interact only occasionally with
21   supervisors, coworkers, or the public; and can appropriately
22   deal with ordinary changes in a simple unskilled occupation.
23           Applying that residual functional capacity finding at
24   step four, ALJ Eldred concluded that plaintiff is incapable of
25   performing his past relevant work and proceeded to step five

1   after noting that the Commissioner's -- Commissioner bears the
2   burden of proof at step five.
3           The ALJ concluded that if plaintiff were capable of
4   performing the full range of sedentary work, the
5   Medical-Vocational Guidelines, or the grids, would direct a
6   finding of no disability under Grid Rule 201.28.  Because of the
7   additional limitations that would affect the job base on which
8   the grids are predicated, he consulted with a vocational expert
9   and concluded that plaintiff is capable of performing available
10  work in the national economy, citing as representative positions
11  addresser, document preparer, and cable worker, and therefore
12  concluded that plaintiff was not disabled at the relevant times.
13          The Court's function in this case is limited to
14  determining whether correct legal principles were applied and
15  the resulting determination is supported by substantial
16  evidence, which is defined as such relevant evidence as a
17  reasonable mind would find sufficient to support a conclusion.
18  As the Second Circuit noted in *Brault v. Social Security*
19  *Administration Commissioner*, 683 F.3d 443 from the Second
20  Circuit 2012, this is an exceedingly demanding and deferential
21  standard.  It means, among other things, that once an ALJ finds
22  a fact, that fact can be rejected only if a reasonable
23  factfinder would have to conclude otherwise.
24          In this case, plaintiff raises several contentions in
25  support of his challenge to the underlying determination.  He

1  contends that there's error in finding that plaintiff can work
2  consistently without being off task and absent to a degree that
3  would preclude work.  He also challenges the mental component of
4  his RFC as not being supported.  The focus of that challenge is
5  on the opinion of state agency consultant Dr. M. D'Ortana and
6  the consideration of consultative examiner DDR. Mary Ann Moore.
7  As I will more fully elaborate, both of those consultants found
8  limitations in the ability of plaintiff to perform pursuant to a
9  schedule.
10             He also challenges the physical component of the RFC
11 as not supported.  The focus of that is on the opinions of
12 Dr. Gilbert Jenouri, an examining consultative examiner, and
13 Dr. Ahmed, a state agency consultant.
14             And his last argument is derivative.  At step five,
15 he challenges the underlying determination because of the errors
16 alleged concerning the RFC finding.
17             First, I'd note, as a backdrop, we're dealing with a
18 closed period of between October 18th -- October 17, 2017, and
19 March 31, 2019.  The record contains several medical opinions.
20 Because of the date that the application in this case was filed,
21 the new amended regulations concerning weighing of medical
22 opinion evidence applies.  Under the new regulations, the ALJ
23 does not defer or give any specific evidentiary weight,
24 including controlling weight, to any medical opinions or prior
25 administrative medical findings, including those from a

1  claimant's medical sources, 20 C.F.R. Section 404.1520c(a).
2  Instead, the ALJ must consider the medical opinions using
3  relevant factors, including primarily supportability and
4  consistency, and must articulate how persuasive he or she found
5  each medical opinion and must explain how he or she considered
6  the supportability and consistency of those opinions.
7            The regulations cite other factors which the ALJ may
8  consider, but is not required to, including the source's
9  relationship with the claimant, et cetera, the specialization,
10 if any, of the source, and other factors.
11           In this case, there are four opinions that speak to
12 plaintiff being off task or absent.  Dr. M. D'Ortana issued an
13 opinion, a state agency consultant, on May 25, 2018.  It appears
14 at 123 to 137 of the Administrative Transcript.  It is found
15 persuasive by the Administrative Law Judge at page 23.  Dr.
16 D'Ortana in the section one worksheet found a moderate
17 limitation in plaintiff's ability to perform within a schedule
18 and maintain regular attendance and so forth, but concluded in
19 part three, addressing the mental RFC, that plaintiff retained
20 the ability to perform the mental -- the basic mental demands of
21 unskilled work.  That's at page 145.
22           Dr. Mary Ann Moore issued an opinion on May 9, 2019,
23 based upon her examination of the plaintiff.  It appears at 641
24 to 646 of the Administrative Transcript and is found persuasive
25 at page 23 by the Administrative Law Judge.  She concludes that

1    plaintiff suffers from moderate to marked limitations on, among
2    other things, plaintiff's ability to sustain an ordinary routine
3    and regular attendance at work.  That's page 645.  The
4    Administrative Law Judge rejected the marked portion of that
5    opinion.
6              Dr. Thomas Van Gorder, plaintiff's treating
7    physician, issued an opinion on July 2, 2019, shortly -- shortly
8    after plaintiff's two knee surgeries.  It appears at 817 to 818
9    of the Administrative Transcript.  The Administrative Law Judge
10   found it partially persuasive at page 23, rejecting as
11   unpersuasive the portion of the opinion that opined that
12   plaintiff would be off task between greater than 20 and less
13   than 35 percent of the time.
14             Lastly, Nurse Practitioner -- Dr. -- I'm sorry, Nurse
15   Practitioner Maistruk issued an opinion on July 10, 2019, at
16   pages 824 to 825 of the Administrative Transcript.  The ALJ
17   concluded at page 23 it was unpersuasive.  Nurse Practitioner
18   Maistruk concluded that plaintiff would be off task more than
19   33 percent of the day and absent more than four times per month.
20   The -- I have reviewed the Administrative Law Judge's
21   determination and find that those opinions were properly weighed
22   by the Administrative Law Judge.
23             The plaintiff's reliance on hospital stays is not
24   persuasive.  I know that there were 57 days in four years, but
25   there were only four stays during the relevant period of time

1  and most of the early stays related to substance abuse issues,
2  which seem to have resolved.
3           The opinion of Dr. Moore, in my view, is properly
4  limited and the marked limitation rejected.  It was explained at
5  page 23 and, when you read the decision as a whole, the -- one
6  of the things that persuaded the Administrative Law Judge was
7  plaintiff's robust activities of daily living, which are
8  outlined at page 22, and include many things that suggest he has
9  the ability to remain on task and perform within a schedule.  He
10 manages household duties, yard work, he's active with his
11 children, enjoys time with his family, he walks his dog around
12 town, talks to local merchants or his parents during the day
13 while his children are at school, he attends AA meetings on a
14 regular basis, he attends barbershop quartet one to two times
15 per month, he's involved in after school activities, spends time
16 with his family on a regular basis, manages a busy household, he
17 walks his dog a mile a day.  These are all recounted at page 22.
18          Dr. -- with regard to Dr. D'Ortana, first of all, it
19 is well accepted that a state agency consultant can provide
20 substantial evidence and can -- the opinion, if it's supported
21 by substantial evidence, can even trump a treating source,
22 *Camille v. Colvin*, 652 F. App'x 25, Second Circuit, 2016; *A.B.*
23 *v. Commissioner of Social Security*, 2018 WL 3232347 from the
24 Northern District of New York, June 18, 20 -- I'm sorry,
25 June 29, 2018; and *Heim v. Commissioner of Social Security*, 2018

1  WL 1621521 from the Northern District of New York, March 30,
2  2018.
3              He is an agency expert who reviewed the matter, his
4  opinion is not inconsistent with simple unskilled work.  I agree
5  that his opinion could have been more illuminating, but he does,
6  in the mental RFC portion, recount an explanation of the
7  background of the plaintiff and concludes that on the whole,
8  claimant retains the ability to perform the basic mental demands
9  of unskilled work.  I recognize, as I said, it could have been a
10 more robust explanation.  I recognize the decision such as
11 *Milner v. Berryhill*, 2018 WL 461095, from the District of New
12 Mexico, January 18, 2018, relied on by the plaintiff, although
13 that was focused on the POMS, which is not binding, of course,
14 on the court.  I think when you read the decision as a whole,
15 substantial evidence supports the RFC finding that plaintiff can
16 perform simple unskilled work with the limitations noted, and
17 there are cases that clearly suggest that the inability -- the
18 moderate limitation and the inability to maintain a schedule is
19 not inconsistent with the performance of basic unskilled work,
20 *Tamara M. v. Saul*, 2021 WL 1198259, from the Northern District
21 of New York, March 30, 2021.
22             Plaintiff also challenges the residual functional
23 capacity finding, quote, "the mental and physical components."
24 An RFC, of course, represents the range of tasks a claimant is
25 capable of performing notwithstanding his or her impairments, 20

1  C.F.R. Section 404.1545a, *Tankisi v. Commissioner of Social*

2  *Security*, 521 F. App'x 29 at 33, Second Circuit, 2013.  An RFC

3  ordinarily represents a claimant's maximum ability to perform

4  sustained work activities in an ordinary setting on a regular

5  and continuing basis, meaning eight hours a day for five days a

6  week or an equivalent schedule.  And, of course, an RFC must be

7  supported by substantial evidence and is informed by

8  consideration of all of the relevant medical and other evidence.

9            In this case, the physical component -- and I note

10 that the RFC, as the Commissioner has argued in this case, is

11 extremely limited to a lesser range of sedentary work than the

12 regulations prescribe.  Physically, I believe the RFC is

13 supported by the opinion of state agency consultant Dr. S. Ahmed

14 from May 25, 2018.  Again, it's Exhibit 3A.  And as I previously

15 indicated, a state agency consultant's opinion can provide

16 substantial evidence.  It is also supported by the opinion of

17 Dr. Gilbert Jenouri who examined the claimant.  That is --

18 appears at 648 to 652, including an attachment of the

19 Administrative Transcript.  Dr. Jenouri found moderate -- mild

20 to moderate restriction in walking or standing long periods,

21 bending, stair climbing, lifting, and carrying.  The claimant is

22 restricted from driving and operating heavy machinery.  That is

23 wholly consistent with the RFC finding.  It is supported by the

24 robust activities of daily living, which were recounted earlier,

25 and the evidence which shows that plaintiff is doing well after

1  his surgery.
2           As I indicated, his first knee surgery -- his first
3  knee complaint was September 2018.  That's at 1062.  He had
4  surgery on his right knee on April 9th -- April 19th and on his
5  left knee -- I'm sorry, in April of 2019, his left knee in May
6  of 2019.  Those were characterized as successful.  The -- a
7  June 12, 2019, treatment note reflects that plaintiff's left
8  knee is doing very well after surgery 8/19, and there's similar
9  indication that his right knee was doing well, also.  And it was
10 noted Dr. Thomas Van Gorder, who treated plaintiff for his knee,
11 opined on page 817 that his knees would not cause pain.
12          So in sum, I believe the -- and Dr. Van Gorder also
13 opined in that opinion that plaintiff can stand and walk for
14 approximately four hours in an eight-hour workday, so I find the
15 physical component of the RFC is well supported.
16          Turning to the mental component, I believe that it is
17 also supported by the robust activities of daily living.  Dr.
18 Moore's observations during her examination and opinion, and the
19 opinion of Dr. D'Ortana, as I indicated previously under *Tamara*
20 *M.*, a moderate limitation in the ability to perform within a
21 schedule is not inconsistent with performance of simple
22 unskilled work.
23          The -- in conclusion, I find that the RFC is
24 supported by substantial evidence, the medical opinions in this
25 case were properly evaluated, and the explanation for the

1  Administrative Law Judge's determination with regard to those
2  was appropriate and complete when the decision was read as a
3  whole, so I will grant judgment on the pleadings to the
4  defendant and order dismissal of plaintiff's complaint.
5           Again, thank you both for excellent presentations.  I
6  hope you have a good day.
7           MR. GORTON:  Thank you, your Honor.
8           MS. LACOUNT:  Thank you.
9           (Time noted:  11:48 a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1
 2
 3
 4                CERTIFICATE OF OFFICIAL REPORTER
 5
 6
 7           I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 8   NYRCR, Official U.S. Court Reporter, in and for the United
 9   States District Court for the Northern District of New York, DO
10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
11   States Code, that the foregoing is a true and correct transcript
12   of the stenographically reported proceedings held in the
13   above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
15   the United States.
16
17              Dated this 13th day of June, 2022.
18
19              s/ Hannah F. Cavanaugh_____
20              HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
21              Official U.S. Court Reporter
22
23
24
25
```